GLADNEY, Judge.
The defendant, A. J. Moos, has appealed from a judgment awarding the plaintiff, Green Mack, workmen’s compensation during the period from November 11, 1956, through June 4, 1957, contending Mack did not sustain the accidental injury upon which the award is predicated. Appellee has answered the appeal in order to have the decree amended by increasing the amount of compensation awarded to 300 weeks at $10 per week, payable from date of June 4, 1957.
Unfortunately, the record is pregnant with such contradictory testimony it is strongly suggestive of perjury, a view held by the trial judge, who evidenced his intention of having an investigation made by the proper officials to determine any violation of law. We wholeheartedly commend the court for its efforts in that direction.
The case entirely turns upon a correct finding of whether or not Green Mack sustained injury to his back by reason of an accident which he testified occurred during the midafternoon of Sunday, November 11, 1956, while he was engaged in his employment as a filling station attendant. It is pertinent to note plaintiff’s testimony on this point is not corroborated by a single wit *786 ness, but in fact, is flatly contradicted by three other employees of the station.
At the time of the alleged accident plaintiff, a colored man of about fifty years, had worked about three weeks for the defendant at the latter’s Esso Service Station in West Monroe, Louisiana, at a salary of $40 per week, in the capacity of a service station attendant. Plaintiff testified that while at work about 3:30 o’clock P.M. Sunday, November 11, 1956, he sustained an accident, the occurrence of which was denied under oath by Davie Goldsmith, Kenneth Ray Crenshaw and Jesse Cruse.
Mack’s testimony concerning the accident was that he was in the grease rack, stooped over winding up an airline when Crenshaw drove a car in behind him and when Davie Goldsmith holloed: “Look out Mack”, he ran backward and struck his back upon a piece of iron used in patching tubes, and fell, injuring his back and causing pain which felt “like pins * * * from the hips down”; that after a brief interval he informed Goldsmith, Crenshaw and Cruse he had hurt his back; that Crenshaw then felt a place on his back near the beltline where a knot had arisen the size of an egg, and he quoted Crenshaw as saying he was sorry he had caused him to be hurt. The witness also stated Cruse reprimanded Crenshaw for driving so carelessly. Plaintiff said he reported the accident to the defendant on Monday, at which time he was laid off except for weekend work.
Jesse Cruse denied Mack told him of the accident on November 11th and said the first he knew of Mack’s complaint was when he was so informed by Mr. Moos during the latter part of the week. Cruse also testified he did not recall Crenshaw driving on the grease rack as described by plaintiff and he did not reprimand Crenshaw. Kenneth Ray Crenshaw testified he was not informed of the accident by plaintiff, who did not complain to him at the time of having been hurt. He declared he did not examine plaintiff’s back nor did he apologize to him for causing plaintiff to hurt himself. The testimony of plaintiff was also contradicted by Davie Goldsmith and by A. J. Moos, the owner of the station. The latter testified Mack did not complain or give notice to him of any injury or accident until Friday. The testimony of plaintiff was again denied by Dr. Cannon. During the course of the trial Mack repeatedly stated he had never had any back trouble prior to the accident of November 11, 1956, which was the first injury to his back. Dr. Cannon testified that on the occasion of his first examination Mack stated to him he had been having discomfort involving his lower back since 1952, and had since that time worn a steel brace, but did not wear it consistently.
The defense called to the witness stand B. H. Howard, who apparently was completely disinterested in the outcome of the suit. Howard testified he had known Mack for about three years; that Mack two years ago had hauled hands to his place to pick cotton; and at that time plaintiff did not walk erect or in a normal fashion and complained of not being able to do a real day’s work.
The judge a quo in his reasons for judgment related there was no question in his mind but that the accident occurred on November 11, 1956, as testified to by the plaintiff and, therefore, plaintiff was entitled to recover for such injury. His conclusion was predicated largely upon his evaluation of the testimony of Davie Goldsmith, whom the court apparently believed had committed perjury. Goldsmith was examined closely by both attorneys. He testified he was visited a number of times by Mack but refused to see him as he did not see any accident and didn’t want to be involved; that finally Mack met him on the street and persuaded him to go to the office of plaintiff’s attorney, at which place Goldsmith signed a statement written out by the attorney. The statement recited the accident occurred substantially as testified to by plaintiff and was to the effect plaintiff had told him of the accident and that on the following day, Monday, Mack *787 told Mr. Joe Moos of his injury. Goldsmith, though admitting to his printed signature to the statement, insisted that he was illiterate except he could print his name and he could not read; that the lawyer had not read the statement to him and that he had told him he did not see such an accident happen. Goldsmith also testified plaintiff had worked each day following the accident through Thursday, June 14th, before he was laid off. It was proven plaintiff could not have worked on June 14th because the records of Charity Hospital disclosed Mack appeared at that institution on June 14th. It was also contended plaintiff called on Dr. Cannon and received a medical examination on June 14th. However, Dr. Cannon testified his records first indicated that the examination was made on June 14th, but he knew the X-ray pictures were taken by Dr. Millsaps on June 16th, the same day of the examination. He assumed plaintiff had called by his office on June 14th and was told to return for the examination on the 16th.
Mr. Moos was also taken to task by the judge a quo for testifying plaintiff continued to work through June 14th, but the latter when confronted with the testimony of Dr. Cannon that plaintiff was at his office on June 14th, attempted to retract his testimony by saying that such a period of time had elapsed he could not be expected to remember that far back. Counsel for appellant offers an explanation which has some plausibility for the incorrect statements as to plaintiff’s employment from Sunday through Thursday, by pointing out that Moos did not carry compensation insurance, that no investigation was made following the accident, and that the first indication of a claim for compensation came approximately six months after the accident when the suit was actually served. The employment records were not produced to refresh the memory of the witnesses. It seems possible Moos and Goldsmith could have been honestly mistaken in testifying plaintiff worked through Thursday. But whether or not the testimony of Moos and Goldsmith was entirely correct, we find it difficult to believe Cruse and Crenshaw would commit perjury by denying the occurrence of an accident under the circumstances related.
We think the trial judge fell into error in resting his decision solely upon untruthfulness vel non by Goldsmith and Moos. Certainly, it would seem that if Moos and Goldsmith are guilty of falsehood then also by the same measure Cruse and Crenshaw must likewise be cast. To reach such a verdict it is necessary to accept the testimony of plaintiff who was repeatedly contradicted by the four witnesses above mentioned, and also we must consider plaintiff’s denial under oath he had ever had any trouble with his back prior to November 11, 1956, although he told Dr. Cannon he had been suffering with the backache and had worn a steel brace intermittently since 1952.
There is no dispute concerning the medical evidence. Following an examination by Dr. Faheam Cannon, an orthopedic surgeon, it was found plaintiff was suffering from a herniated intervertebral disc with a pro-tusion of the nucleus pulposus at the 4th and 5th lumbar interspaces, and was operated on on January 8, 1957. On April 4, 1957, Dr. Cannon stated the patient’s postoperative condition had been satisfactory, that he was last seen on April 2nd, and it was felt that plaintiff could be dismissed in approximately nine weeks from that date. The doctor estimated a permanent residual disability of fifteen per cent of the body as a whole, a normal rating after a successful disc operation. He was of the opinion plaintiff was • fully able to return to his former occupation.
Dr. Cannon was also of the opinion that if Mack actually sustained accidental injury on November 11th, in the manner reported to him, the accident could have been a causative factor in precipitating a disc that had already been present at one time in the past and probably became quiescent or asymptomatic. The examination disclosed *788 the patient had been subject to certain degenerating changes to the muscles and the bony structures. It was found the patient had three-quarters of an inch loss through atrophy in the size of thigh muscles eight inches above the tibial tubercle, an area just below the knee. The doctor said such atrophy and degenerative changes could not have occurred within the brief interval after the accident and were indicative of an old injury.
Our finding upon the factual issue presented obviates consideration of the revision of judgment requested in appellee’s answer to the appeal, for reversal of the decree is in order. Accordingly, the judgment from which appealed is annulled, reversed and set aside, and it is now ordered there be judgment in favor of the defendant, rejecting the demands of plaintiff at his costs.